Ry. Co. v. Rowe (Tex. Civ. App.) 69 S.W. (2d) 169; Ford Motor Co. v. Maddin (Tex. Com. App., opinion adopted) 76 S.W.(2d) 474.

We have considered the other assignments of error and find no reversible error. The judgment of the Court of Civil Appeals as to the Brawley branch of the case is affirmed.

Opinion adopted by the Supreme Court.

### SCHLOTTMANN et al. v. WIESE et al.
### No. 10108.

Court of Civil Appeals of Texas. Galveston.
June 29, 1935.

Rehearing Denied Oct. 3, 1935.

Pennington & Bouldin and Albert Stone, all of Brenham, for appellants.

Searcy & Hodde, of Brenham, for appellee Tesch.

W. J. Embrey, of Brenham, for other appellees.

GRAVES, Justice.

This general statement—taken from the brief of one of the parties—is thought to be correct:

"One F. W. Quebe purchased some 631.-36 acres of land in the Luke Lessessier League in Washington County, Texas, from J. H. Williams, et al., which deal was fully consummated on or about January 2, 1924. Of the purchase money the said F. W. Quebe paid only a very small portion, but he borrowed the greater portion of the money he needed to pay for the land from his relatives. He executed five notes of $3,000.00 each to Willie Wiese, and, in order to secure the payment thereof, executed a deed of trust covering the above 631.36 acres of land, dated January 5, 1924; he executed to Edwin Loesch one note of $3,000.00, and, in order to secure the payment thereof, executed a deed of trust on the same lands, which deed of trust is dated January 3, 1924; he executed to Henry Quebe two notes of $3,000.00 each, and, to secure these notes, also executed a deed of trust on the same lands dated January 5, 1924; F. W. Quebe also borrowed from Mrs. Louisa Loesch $8,000.00, evidenced by two notes of $4,000.00 each, and, to secure the payment thereof, executed a deed of trust covering the above lands, which deed of trust is dated January 4, 1924; F. W. Quebe also on January 2, 1924, executed two notes of $2,500.00 each to W. L. Tesch, which are secured by a deed of trust lien on the same lands, dated January 2, 1924. The notes executed to W. L. Tesch evidenced an indebtedness already existing against the lands when F. W. Quebe purchased them from J. H. Williams, et al., and this claim was merely shifted from the former owners of the land to F. W. Quebe. These various deeds of trust were all acknowledged for record by the maker on the same day—that is, January 5th of 1924—and were filed by the respective holders in the following order with the county clerk of Washington County, Texas, viz.:

"W. L. Tesch filed his on January 2, 1924; Willie Wiese filed his on January 4, 1927; Henry Quebe, Louisa Loesch, and Edwin Loesch, each filed theirs on January 31, 1930.

"Mrs. Malinda Wiese, individually and as independent executrix of the estate of her deceased husband, Willie Wiese,

filed this suit in the district court of Washington County, against F. W. Quebe, Edwin Loesch, Bertha Quebe, the surviving wife of Henry Quebe, deceased, and as legatee under his will, and Henry Schlottmann, as administrator of the estate of Louisa Loesch, deceased, in which she sought judgment against F. W. Quebe for the amount of money due on her notes, and foreclosure of the deed of trust lien on the lands. As against the defendants Edwin Loesch, Bertha Quebe, and Henry Schlottmann, as administrator of the estate of Louisa Loesch, deceased, she claimed that they were claiming some sort of lien on the same lands, which liens —if they had any—were inferior and subordinate to the lien she held on the lands by reason of the notes and deed of trust her husband, Willie Wiese, deceased, had acquired. To the petition of Mrs. Malinda Wiese individually and as executrix of her deceased husband, Willie Wiese, the defendants Edwin Loesch, Bertha Quebe, and Henry Schlottmann as administrator of the estate of Louisa Loesch, deceased, answered that Willie Wiese was instrumental and induced F. W. Quebe to purchase the lands, that he was related to him, and that Willie Wiese at the time of the execution of the notes and deed of trust had full knowledge of the fact that F. W. Quebe was also borrowing money from Henry Quebe, Edwin Loesch, and Louisa Loesch, and that similar deeds of trust were to be executed to them as to Willie Wiese, and that the lien of Mrs. Malinda Wiese was in fact on a parity with the lien of the defendants, Edwin Loesch, Bertha Quebe, and Henry Schlottmann as administrator. This in a supplemental petition Mrs. Malinda Wiese denied.

"In this suit W. L. Tesch intervened, setting up the fact that the notes he held represented an indebtedness existing against the land when F. W. Quebe purchased it, and that his lien was prior and superior to the liens of Mrs. Malinda Wiese, Edwin Loesch, Bertha Quebe, or Henry Schlottman, as administrator.

"At the beginning of the trial Mrs. Malinda Wiese, as plaintiff, and Edwin Loesch, Bertha Quebe, and Henry Schlottmann, administrator, as defendants, all agreed that it was a fact that the lien of W. L. Tesch was superior to the lien of any of the other parties, and judgment was so entered; as between the plaintiff, Mrs. Malinda Wiese, and the defendants Edwin Loesch, Bertha Quebe, and Henry Schlottman, administrator, the case was tried before a jury."

One special issue was submitted to the jury, which is as follows: "Do you find from the evidence that Willie Wiese had notice at the time he made the loan represented by the notes in evidence to F. W. Quebe, to assist in buying the land described in plaintiff's petition, or at any time prior thereto, of the fact that Edwin Loesch, Mrs. Louisa Loesch, and Henry Quebe, Sr., were also making loans to the said F. W. Quebe, for the same purposes and on the same security?" and which the jury answered, "No."

The court then rendered judgment for each of the respective parties for the amounts due on the several notes against F. W. Quebe, the maker, and held that the lien of W. L. Tesch was a prior lien to any of the others, and that the lien of Mrs. Malinda Wiese was next to that of W. L. Tesch, and prior to those of any of the remaining parties, and that the liens of Edwin Loesch, Mrs. Bertha Quebe, and Henry Schlottmann as administrator of the estate of Mrs. Louisa Loesch were on a parity with each other, and ordered the lands sold and the proceeds applied in the manner thus herein set out.

From that judgment Henry Schlottmann, as administrator of the estate of Mrs. Louisa Loesch, deceased, Mrs. Bertha Quebe, and Edwin Loesch appeal to this court, setting up these grounds for reversal:

"(1) In a contest between the lienholders on the question of priority of their respective liens, the court properly charged the jury that the burden of proof was on the plaintiff to establish by a preponderance of the testimony that the plaintiff did not have any notice of the existence of the other liens, and there was not a particle of testimony introduced to prove that plaintiff did not have notice of the other liens, the finding of the jury that the plaintiff did not have such notice is not in accordance with nor based upon instructions of the court and does not fulfill the legal requirements laid down by the court and should be set aside.

"(2) Where a mortgagor executed four deeds of trust to different mortgagees, all dated from January 2nd to January

4th, for purchase money of real estate mortgaged, all acknowledged on January 5th of the same year, all prepared by the same attorney who was also the trustee in each of the deeds of trust, and same attorney wrote out the checks to close the transaction and prepared all of the notes, his knowledge of the transaction was constructive knowledge to all of the parties of all of the facts in connection therewith, and was notice to each of the mortgagees of the existence of the other mortgages and none of the holders of them could gain any priority by reason of a prior registration thereof, and a requested charge to instruct a verdict declaring all of the liens on a parity should have been given.

"(3) In a suit in which one of the parties is disqualified under the statutes from testifying in the case and the attorney for the party who is disqualified from testifying in the course of his argument to the jury makes the following statement:

" 'In other words, they would have you believe Mrs. Wiese has to prove everything but yet when she was put on the stand they say "Whoa, we object," and the same attorney later on in the course of his argument makes the following statement: "And try to rob Mrs. Wiese and her little kids of it, who has to slave and make her living some kind of way." And the jury in the face of uncontradicted evidence returns a verdict in favor of this party, the court as a matter of law must know that such argument and remarks of counsel was so highly inflammatory and so prejudicial that injury arose to the other parties to the suit from the use of such language, and the judgment should be set aside.'

"(4) Where a plaintiff files suit in her individual capacity and also as executrix under a will and offers the will in evidence, and the validity of the will's proper probation and registration are essential to her maintaining a suit as party plaintiff, and when the will is offered in evidence to sustain such pleading, and it is disclosed that the will is a joint will between husband and wife not witnessed by two witnesses as required by law and the record discloses that it is only proven for probate by the testimony of one witness to the effect that the will was only written in the handwriting of the deceased husband, it is apparent on the face of the record that such will has been improperly admitted and that plaintiff is not properly before the court, and no judgment can be rendered in her favor based on such will. This is a fundamental error requiring a setting aside of the judgment secured in this cause."

In the state of the record, none of these presentments can be sustained:

(1) As affects the first of them—that is, whether or not there is any evidence to sustain the jury's finding that Willie Wiese had no notice before making his loan that the other parties were also making like loans—this court reaches two conclusions of law that materially affect the character of and the quantum of the evidence necessary to sustain that finding, to wit: That the testimony of F. W. Quebe, upon which alone the appellants rely for sustainment of their contention that the verdict was devoid of any evidence to support it, was not admissible over the objection of the appellee upon that ground, because in plain violation of R. S. art. 3716, since he was a defendant below, had not been called by the opposite party, and in giving this relied upon testimony was simply reciting his own conversations, transactions, and exchange of statements with the deceased mortgagee, whose executrix as such was the only opposing party to him at this trial and had not made him her witness.

(2) That the trial court's instruction to the jury that the burden was upon her to prove by a preponderance of the testimony that her husband did not have the notice inquired about in the special issue submitted was clearly error for the controlling reason, among others, that the appellants had been the affirmative proponents of this issue as the main basis for their claim in the trial court that they were on a parity as to their liens with the appellee, who had merely in her petition for foreclosure of her alleged first lien against them charged them with setting up some opposing claim against the land, the precise nature of which she did not know, their answers thereto bringing this issue into the cause for the first time by specifically charging that Willie Wiese had had such notice before making his own loan. See authorities next hereinafter collated on this same question.

Furthermore, the rule of law appellants in this connection rely upon and quote from Texas Jurisprudence, vol. 29, at page 858, to the effect that "a mortgagee who seeks to have his lien preferred to the interest or lien of an earlier claimant must

assume the burden of establishing that he took his security without knowledge or notice of the adverse interest. As it has been aptly expressed, the burden of proof rests upon him to show that he is 'a creditor for value without notice.' If he does not present any evidence tending to establish absence or knowledge or notice on his part, the holder of the earlier lien or interest is to be held to have the superior right," is inapplicable, because, as the foregoing general statement has disclosed, the liens claimed by the appellants here, as against that of the appellee, were by their own showing and main arguments not earlier than or prior to that of the appellee, but, while one or two of them were dated a day or so before, they were parts of one and the same general transaction wherein the notes and liens were all given upon the same basis and contemporaneously, in that they were each and all acknowledged for record on the same day—that is, January 5, 1924; hence were all made capable of being recorded liens against the land at exactly the same time, and the appellee's was actually filed three years before any of the others. She therefore was undisputedly the earlier recorded lienholder; hence the rule appellants so invoke would seem to operate in her favor rather than in their own.

Wherefore the fact conditions necessary to the application of the quoted rule being absent, the well-recognized contrary rule governs in this instance, that is, thus stated in 41 Corpus Juris, at page 600, § 560:

"Generally, the party demanding the postponement of a lien apparently superior to his own is obliged to assume the burden of proving the facts on which he relies for the relief asked. The burden of proving an affirmative averment necessary to be pleaded is upon the party pleading it." For other authorities to the same effect see Watson v. Barnard, 105 Wash. 536, 178 P. 477; Taylor v. Burgett, 207 Ala. 54, 91 So. 786; Holford v. Patterson (Tex. Civ. App.) 240 S. W. 341; Hill State Bank of Weimar v. Schindler (Tex. Civ. App.) 33 S.W.(2d) 833.

■ (3) Independently, however, of the two errors of law discussed supra, on a careful review of the statement of facts, it is the further conclusion of this court that the evidence was amply sufficient to sustain the jury's verdict on this sole issue submitted, in that the appellee marshaled upon her side an array of probative circumstances, the combined force of which made it not an unreasonable inference that Willie Wiese had no such notice as was inquired about. Without undertaking here to detail, a brief résumé of the most material of these facts and circumstances may be thus made:

(1) The contradicting testimony of this witness, F. W. Quebe, that at the time he sold 25 acres off this farm in January of 1930, the mortgagee, Willie Wiese, had his lien of record and was claiming a first lien and demanding the proceeds of the sale of such 25 acres; that appellant mortgagees permitted him to have those proceeds, while so claiming a first lien on the land, and released their lien as to such acreage sold off.

(2) Quebe further testified that, just before the decease of Willie Wiese, the lienholders all had a meeting over the bank, where witness was present, Wiese claiming at that time a first lien on the land (which witness admits he did not contradict), and threatened the other lienholders with foreclosure of a first lien, and they paid Wiese $1,000 not to bring such suit.

(3) He further admitted he was interested in the outcome of the suit, to the extent of seeing appellants satisfied in their contentions.

(4) The appellee further presenting testimony of Wiese's attorney, Mr. Embrey, that Wiese had employed him on December 30, 1929, to investigate the mortgage records, to ascertain if any other liens were on this land, than his lien.

(5) Further, the testimony of Mr. Searcy, the attorney who prepared all the papers and liens held by both sides, that Wiese was not at his office and had no notice of such appellants' liens from that source. That the witness, Quebe, handled the entire transaction.

(6) Further, the testimony of the appellee, Mrs. Wiese, that the first time they were advised of the existence of other liens was in January, 1930, when the witness, Quebe, asked Willie Wiese, her husband, to release his lien on the 25 acres he wanted to sell off the farm, the latter making at the time demand for payment of the proceeds of the sale of such land on his first lien, and witness, F. W. Quebe, then stating he would have "to see the rest of the folks," and, on Willie Wiese's inquiring who they were, Quebe gave in answer the names of appellants.

■ (4) Appellants' second proposition is negatived by the testimony of both the

client, Mr. Quebe, and the attorney, Mr. Searcy, as to the essential facts upon which it is predicated. Since that matter was neither submitted, nor requested to be, as a fact issue, nor indeed pleaded at all as such by the appellants, the trial court will be presumed to have accepted what these two sole participants in it said was true, their statements being to this general purport: That Mr. Quebe, the mortgagor, executed four deeds of trust to different mortgagees on the same land, which were all prepared by Mr. Searcy and ran to himself as trustee therein, but he was employed by Mr. Quebe alone, as the mortgagor, to handle the entire matter for him only, including the examination of the title to the land, and Mr. Quebe as such mortgagor not only paid him for the entire work, but was also the only person to consult with, see, or deal with the attorney in any detail of the entire transaction, neither the deceased Willie Wiese nor any other holder of any of the deeds of trust having ever seen, talked with, consulted, or even been present in the office of the attorney before, during, or after the time such papers were so prepared by him, nor did any of the others ever pay him anything therefor; Mr. Quebe's individual further statement being that he at the time merely advised Willie Wiese that Mr. Searcy was preparing the papers. Obviously, since Mr. Searcy was thus neither the attorney in these matters of Wiese, nor even of any of the appellants, but only of Mr. Quebe himself, the general principle of law that the particular knowledge of one's employed attorney is notice to such a client of his cannot be applied in favor of these appellants in this situation. 6 Corpus Juris, p. 630, § 124; 6 Corpus Juris, p. 639, § 144; Flanders v. Rosoff, 111 App. Div. 1, 97 N. Y. S. 514; Arrington v. Arrington, 114 N. C. 151, 19 S. E. 351; Osage Oil & Gas Co. v. Caulk (Tex. Civ. App.) 243 S. W. 551; Case & Sons Cutlery Co. v. Canode (Tex. Civ. App.) 205 S. W. 350; Houston E. & W. T. Ry. Co. v. Lynch (Tex. Civ. App.) 208 S. W. 714; Smith v. F. W. Heitman Co., 44 Tex. Civ. App. 358, 98 S. W. 1074.

■ (5) A sufficient answer to the claim for reversible error in the outlined argument of the attorney, Mr. Hodde, is that, under the holdings already made herein, nothing therein contained could have constituted any injury to the appellants.

■ (6) The record shows that appellants failed to file a proper plea verified by affidavit, as required by R. S. art. 2010, either denying the authority of the appellee to prosecute this suit as executrix or even raising any question as to the legal capacity in which she sued and called upon them to answer therein, wherefore they waived any right to put that question thereafter in issue, or to have the same considered upon appeal. Article 2010, Revised Civil Statutes; Fischer v. Giddings, 43 Tex. Civ. App. 393, 95 S. W. 33; Purington v. Broughton (Tex. Civ. App.) 158 S. W. 227; Crouch v. Posey (Tex. Civ. App.) 69 S. W. 1001, 1003; Casey v. Texarkana & Ft. S. Ry. Co. (Tex. Civ. App.) 151 S. W. 856; Young v. Meredith, 38 Tex. Civ. App. 59, 85 S. W. 32; Davis v. White (Tex. Civ. App.) 207 S. W. 679; Gulf, C. & S. F. Ry. Co. v. Houston (Tex. Civ. App.) 45 S. W. (2d) 771, 775; Ferguson v. Ferguson (Tex. Civ. App.) 13 S.W.(2d) 456; Richardson v. Bean (Tex. Civ. App.) 246 S. W. 1096.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal. The judgment of the trial court has accordingly in all things been affirmed.

Affirmed.